UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

HAROLD H. WRIGHT, JR., and SYNDI
WRIGHT, husband and wife,

                Plaintiffs,

v.

PIERCE COUNTY, et al.,

                Defendants.

CASE NO. C11-5154 BHS

ORDER GRANTING IN PART
AND DENYING IN PART
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND
REMANDING

       This matter comes before the Court on Defendants Jane Doe Board, Ken Board, James Harai, Jane Doe Harai, Gerald Horne, Jane Doe Horne, Lori Kooiman, Jane Doe Lindquist, Mark Lindquist, Jane Doe Parfitt, Mark Parfitt, Jane Doe Pastor, Paul Pastor, Pierce County, John Doe Robnett, and Mary Robnett's ("Defendants") motion for summary judgment (Dkt. 35). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants the motion on Plaintiffs Harold Wright ("Wright") and Syndi Wright's (collectively the "Wrights") federal claims, denies the motions on the issue of sanctions, and remands the Wrights' state law claims for the reasons stated herein.

# I. PROCEDURAL HISTORY

On February 9, 2011, the Wrights filed a complaint in King County Superior Court for the State of Washington against numerous defendants. Dkt. 1, Exh. A ("Comp"). The Wrights asserted a claim under 42 U.S.C. § 1983 for violations of "Harold Wright's Constitutionally protected rights of due process, freedom of association, and deprived him of his liberty and property" (*id.* ¶ 3.1), a claim under 42 U.S.C. § 1981 for interference "with Harold Wright's employment contract as a Public School employee based on a protected class: his race" (*id.* ¶ 3.2), and claims for negligent training, negligent retention, outrage, abuse of process, and spoliation of evidence (*id.* ¶¶ 3.3–3.7).

On February 24, 2011, Defendants removed the matter to this Court. Dkt. 1.

On May 23, 2013, Defendants filed a motion for summary judgment. Dkt. 35.

On June 5, 2013, Wright filed a motion to amend the complaint seeking to "streamline the case." Dkt. 45 at 3. On June 14, 2013, Defendants responded (Dkt. 54) and submitted evidence in support of their response (Dkts. 55 & 56).

On June 17, 2013, the Wrights responded to Defendants' motion for summary judgment (Dkt. 65) and filed a motion to continue Defendants' motion pursuant to Fed. R. Civ. P. 56(d) (Dkt. 66). On June 19, 2013, the Court *sua sponte* removed the Wrights' motion to continue from the docket because Rule 56(d) only requires an affidavit or declaration, not a separate motion. *See* docket entry re: Dkt. 66.

On June 19, 2013, Wright filed a motion to correct incorrectly uploaded document or in the alternative relief from a case schedule deadline. Dkt. 68.

On June 21, 2013, Defendants replied to their summary judgment motion (Dkt. 69) and submitted evidence in support of their reply (Dkts. 70–72), and Wright replied to his motion to amend (Dkt. 75).

On June 24, 2013, Defendants responded to Wright's motion to correct.  Dkt. 76.

On June 26, 2013, Defendants filed a statement regarding their summary judgment motion.  Dkt. 78.

On June 28, 2013, Wright replied to his motion to correct (Dkt. 81) and filed a surreply to Defendants' motion for summary judgment (Dkt. 83).

On July 17, 2013, the Court issued an order that, in part, granted Wright's motion to amend, renoted Defendants' motion for summary judgment, and allowed the parties to submit additional briefing.  Dkt. 85.  On July 26, 2013, Wright filed an amended complaint and an additional response.  Dkts. 86 ("Comp.") & 87.  In the amended complaint, Wright asserts three causes of action under 42 U.S.C. § 1983 (Comp., ¶¶ 3.1–3.3) and five state law causes of action (*id.*, ¶¶ 3.4–3.8).

On August 2, 2013, Defendants filed a supplemental reply.  Dkt. 89.

## II. FACTUAL BACKGROUND

Wright was a Tacoma School District employee and principal at Baker Middle School.  Comp., ¶ 2.1.  On January 30, 2004, he went to a restaurant (the "Chalet") with his brother, Daryl Wright, and their friends Jerry McClurkin, and Richy Carter.  *Id.* ¶¶ 2.3, 2.8.  While at the restaurant, the men encountered three young women: Sarah Failey, Stephanie Fincham, and Jamie Whittaker.  *Id.* ¶ 2.5.  Ms. Failey had attended a school where Wright had served as dean of students.  *Id.* ¶ 2.7.

On January 31, 2004, Pierce County police responded to the report of a rape, which had allegedly occurred the prior evening.  Dkt. 39, Declaration of Mary Ann McConaughy ("McConaughy Dec."), Exh A at 11.  In the police report, Ms. Failey and Ms. Fincham are listed as the victims and Wright and his three friends are listed as the suspects.  *Id*. at 8–9.  Ms. Failey reported that two or three of the men took her into a bedroom, her clothes were removed over her protests, and at least two of the men penetrated her.  *Id*. at 12.  After the interview, Ms. Failey went to the hospital to have a sexual assault examination conducted.  *Id*.

Wright claims that Ms. Fincham's mother also placed a 911 call on January 31, 2004.  Dkt. 65-1 at 5–6.  Wright maintains that in that phone call, Ms. Fincham's mother reported that both Ms. Fincham and Ms. Failey were raped by Wright and his brother Daryl.  *Id*.  It is undisputed that a recording of that call no longer exists.  The parties, however, dispute whether the call was intentionally destroyed or recorded over in the normal course of business.

On February 1, 2004, Wright voluntarily called the police after hearing a rumor that he had been accused of a crime.  *Id*. at 14.  The sergeant who answered requested that Wright come to the station to give a statement, which he did.  *Id*.  Once there, Wright waived his *Miranda* rights and then recounted his version of the events on the night in question.  *Id*.

On February 4, 2004, police executed a search warrant at the residence, but did not find anything inculpatory.  *Id*. at 17–20.

1    On January 26, 2006, the Washington State Patrol issued a report from its crime

2 laboratory detailing the analysis of Ms. Failey's sexual assault kit.  *Id*. at 21–22.

3    In February of 2007, the State separately charged Wright and Carter with second

4 degree rape.  *State v. Wright*, 152 Wn. App. 64, 70 (2009).  At the conclusion of trial, the

5 jury was unable to reach a verdict on the charge of second degree rape, but returned a

6 verdict of guilty on third degree rape.  *Id*.  Wright appealed the conviction.  *Id*. at 66.  On

7 September 1, 2009, the Washington Court of Appeals issued an opinion reversing the

8 conviction and remanding for a new trial.  *Id*. at 74.  The court concluded that the trial

9 court should not have included an instruction or verdict form for third degree rape based

10 on the facts of the case.  *Id*. at 71–75.

11    On remand, the State charged Wright with second degree rape.  On January 7,

12 2013, Deputy Prosecuting Attorney Jared Ausserer filed a motion to dismiss the charge.

13 Dkt. 88–2 at 41–42.  The motion reads as follows:

14        Comes now the plaintiff, herein, by its attorney, MARK
       LINDQUIST, Prosecuting Attorney for Pierce County, and moves the court
15        for an order dismissing with prejudice the above entitled action, on the
       grounds and for the reason that There [sic] have been several changes in
16        circumstances surrounding the viability of this case from an evidentiary and
       ethical perspective.
17        A CAD report was located and provided to all parties. The CAD
       report details a call placed by Toni Fincham. This details an allegation by
18        Ms. Fincham that her daughter had also been raped the night before. This,
       when considered in light of Stephanie's initial statements, is problematic
19        because Stephanie describes a detailed scenario in multiple statements
       where she too was sexually assaulted. Stephanie now insists she has no
20        recollection of the incident.
         In light of the recently discovered CAD report, Sarah's statements
21        regarding Toni Fincham not being present or called to contact the police
       lends to additional inconsistencies in her account of that evening/day.

22

1         During the course of witness interviews prior to trial, it became apparent that our witnesses will be unable to testify from memory about much of this incident. This is especially true of Stephanie Fincham and Jamie Whittaker.

2

3         Sarah Failey stated the basis for the dismissal of the civil lawsuit was due to her not wanting to undergo the stress of another trial. However, this is inconsistent with the documents filed in the civil suit as the basis for the dismissal was the expiration of the statute of limitations. This is further complicated by the fact that her account in the civil claim is inconsistent in areas with her statements to law enforcement and us in this matter

4

5

6         Sarah Failey's account of Harold Wright's involvement has significantly deteriorated through the passage of time and in subsequent statements.

7

8         In reviewing a packet of material the Court previously ruled was work product, we discovered an interview of Sarah Failey on 4-13-04. Portions of this interview are inconsistent with Sarah Failey [sic] subsequent statements and testimony.

9

10        The DNA evidence against Harold Wright was subsequently tested to narrow down to include saliva. However, in a recent defense interview of Jeremy Sanderson the Forensic Scientist, it was learned that although the test indicates it is consistent with saliva, he can not testify that it is Wright's saliva as it's a mixed sample. This significantly reduces any likelihood of the State being able to prove the charges against Wright.

11

12

13 *Id.*

14 ### III. DISCUSSION

15 Defendants move for summary judgment on all of the Wrights' claims.  Dkt. 89 at

16 3–5.

17 **A.  Standard**

18        Summary judgment is proper only if the pleadings, the discovery and disclosure

19 materials on file, and any affidavits show that there is no genuine issue as to any material

20 fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

21 The moving party is entitled to judgment as a matter of law when the nonmoving party

22 fails to make a sufficient showing on an essential element of a claim in the case on which

1    the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317,

2    323 (1986).  There is no genuine issue of fact for trial where the record, taken as a whole,

3    could not lead a rational trier of fact to find for the nonmoving party.  *Matsushita Elec.*

4    *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must

5    present specific, significant probative evidence, not simply "some metaphysical doubt").

6    *See also* Fed. R. Civ. P. 56(e).  Conversely, a genuine dispute over a material fact exists

7    if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or

8    jury to resolve the differing versions of the truth.  *Anderson v. Liberty Lobby, Inc.*, 477

9    U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d

10   626, 630 (9th Cir. 1987).

11           The determination of the existence of a material fact is often a close question. The

12   Court must consider the substantive evidentiary burden that the nonmoving party must

13   meet at trial – e.g., a preponderance of the evidence in most civil cases.  *Anderson*, 477

14   U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630.  The Court must resolve any factual

15   issues of controversy in favor of the nonmoving party only when the facts specifically

16   attested by that party contradict facts specifically attested by the moving party.  The

17   nonmoving party may not merely state that it will discredit the moving party's evidence

18   at trial, in the hopes that evidence can be developed at trial to support the claim.  *T.W.*

19   *Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255).  Conclusory,

20   nonspecific statements in affidavits are not sufficient, and missing facts will not be

21   presumed.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

22

**B.     42 U.S.C. § 1983**

Section 1983 is a procedural device for enforcing constitutional provisions and federal statutes; the section does not create or afford substantive rights. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).  In order to state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate that (l) the conduct complained of was committed by a person acting under color of state law and that (2) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or by the laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986).

In this case, the Wrights' section 1983 claims are (1) wrongful conviction, (2) malicious prosecution, and (3) extra-judicial statements.  Comp. ¶¶ 3.1–3.3.

**1.     Wrongful Conviction**

Defendants contend that there is no such cause of action for a wrongful conviction under section 1983.  Dkt. 89 at 3.  Wright contends that, "[w]hile the claim is often acknowledged, no one case could be found that provides in list form, its elements."  Dkt. 65–1 at 13.  Contrary to Wright's contention, the Court is unaware of, and Wright has failed to provide, any authority for the proposition that Wright has a federal right to be free from a wrongful conviction.  Therefore, the Court dismisses Wright's claim for wrongful conviction under section 1983 because Wright fails to state a claim upon which relief may be granted.

1        **2.     Due Process**

2        Wright's sub-claims for the destruction or suppression of evidence are essentially

3   due process claims.  To state a claim for failure to disclose exculpatory evidence, the

4   plaintiff must allege that (1) evidence was suppressed by the government, (2) the

5   withheld evidence was favorable because it was exculpatory or could be used to impeach,

6   and (3) the nondisclosure prejudiced the plaintiff.  *Smith v. Almada*, 640 F.3d 931, 939

7   (9th Cir. 2011) (citing *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999)).  The Supreme

8   Court has stated that "strictly speaking, there is never a real '*Brady* violation' unless the

9   nondisclosure was so serious that there is a reasonable probability that the suppressed

10  evidence would have produced a different verdict." *Id*. at 281.

11       In this case, Wright asserts two allegations of failure to disclose and one allegation

12  of conduct tantamount to the destruction of evidence.  First, Wright alleges that

13  Defendants "either intentionally destroyed or allowed to be destroyed, the material and

14  exculpatory evidence of at least one 911 tape."  Comp. ¶ 3.1.1.  The admissible evidence

15  in the record, however, shows that the recording was maintained by a third party, LESA.

16  Dkt. 55, Declaration of Tifni Buchanan, ¶ 3.  Moreover, only authorized employees of

17  LESA had access to the audiotapes.  *Id*., ¶ 5.  Therefore, Wright has failed to show that

18  any individually named Defendant had the ability to suppress or destroy the 911

19  recording.

20        Furthermore, Wright has failed to show that the recording would have produced a

21  different verdict.  In the original trial, the jury was unable to reach a verdict on the count

22  of second degree rape of Ms. Failey.  There is no reasonable probability that the 911

1   recording of Ms. Fincham's mother would have produced an acquittal of third degree

2   rape, which is non-consensual sex.  Therefore, the Court grants Defendants' motion on

3   Wright's due process claim based on the 911 call.

4       Second, Wright alleges that Defendants "constructively destroyed evidence of an

5   interview with the alleged victim wherein she did not identify Harold Wright as the

6   perpetrator." Comp. ¶ 3.1.3.  There are numerous problems with this allegation.  One

7   problem is that, even at trial, the victim was unable to specifically identify the alleged

8   rapists.  Therefore, even if Ms. Failey failed to identify Wright as the perpetrator, this

9   does not conflict with her testimony at trial.

10      Another problem is that the trial judge ruled that the witness interview was work

11  product and did not need to be disclosed to Wright's attorney.  Kooiman Dec. Exh. B.

12  There is no authority before the Court for the proposition that a prosecutor or police

13  officer is liable for suppression of evidence when acting pursuant to court order.  This is

14  expecially true if the court order expressly states that the work product "does not appear

15  to contain any new facts." *Id*.  Therefore, Wright has failed to meet his burden on the

16  issue of whether the evidence was intentionally suppressed by the prosecution.

17      Wright, however, asserts that prosecutor Lori Kooiman hid the interview in her

18  garage only to be found later by prosecutor Jared Ausserer.  Dkt. 65-1 at 7–8.  This

19  allegation is supported only by the inadmissible declaration of Wright's criminal defense

20  attorney.  The admissible evidence on record shows that Ms. Kooiman did not take any

21  evidence home and that Mr. Ausserer has never been to her house.  *See* Dkts. 58 & 59

22  (declaration of Ms. Kooiman and Mr. Ausserer).  Therefore, Wright has failed to produce

admissible evidence to support his claims, and the Court grants Defendants' motion on Wright's due process claim that is based on the allegation of a suppressed or destroyed witness interview.

Third, Wright alleges that "Defendants Harai and Parrfit undertook conduct tantamount to the intentional destruction of evidence" in the way they conducted interviews of witnesses.  Comp., ¶ 3.1.3.  "[T]here is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government."  *Devereaux v. Abbey*, 263 F.3d 1040, 1074–75 (9th Cir. 2001).  The claimant must, at a minimum, show that "Defendants used investigative techniques that were so coercive and abusive that they knew or should have known that those techniques would yield false information."  *Id*. at 1076.

In this case, Wright has completely failed to meet his burden.  Even if true, Wright's allegations do not support the finding of coercive or abusive techniques.  While allowing witnesses to attend group interviews and/or sharing witness testimony with other witnesses is not the most reliable way to gather information, it is not so coercive or abusive to deliberately fabricate false information.  Therefore, the Court grants Defendants' motion on Wright's due process claim because he has failed to state a constitutional violation.

**3.    Malicious Prosecution**

In order to prevail on a section 1983 claim of malicious prosecution, a plaintiff "must show that the defendants prosecuted [him] with malice and without probable

1   cause, and that they did so for the purpose of denying [him] equal protection or another

2   specific constitutional right." *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir.

3   1995).  The "malice" element may be satisfied by proving that the prosecution

4   complained of was undertaken from improper or wrongful motives or in reckless

5   disregard of the rights of the plaintiff.  *Bender v. City of Seattle*, 99 Wn.2d 582, 594

6   (1983).  Moreover, a jury verdict of guilty "conclusively establish[s] the existence of

7   probable cause."  *Gowin v. Altmiller,* 663 F.2d 820, 823 (9th Cir. 1981) (citing

8   Restatement (Second) of Torts § 667).  This is so even if the conviction is overturned by

9   an appellate tribunal, unless the conviction was obtained by fraud, perjury, or other

10   corrupt means.  *Id*.

11          In this case, Wright not only fails to show malice, but also fails to show a lack of

12   probable cause.  Again, Wright fails to provide any evidence that the prosecution was

13   undertaken for any improper or wrongful means.  More importantly, the jury verdict that

14   Wright was guilty of third degree rape conclusively establishes that there was probable

15   cause to prosecute him.  Wright has failed to overcome this conclusion by showing any

16   fraud, perjury, or corruption.  Therefore, the Court grants Defendants' motion on

17   Wright's claim for malicious prosecution because Wright has failed to show the violation

18   of a constitutional right.

19          **4.      Extra Judicial Statements**

20          Wright alleges that the prosecutors made a public statement in 2013 that they

21   believed Wright was still guilty of the crime.  Comp. ¶ 3.3.  Wright attempts to turn this

22   into a constitutional claim as follows:

Said conduct violated Harold Wright's right to substantive and procedural due process under the Fourteenth Amendment as it had the effect of a governmental pronouncement of guilt while denying him the process of a Constitutionally guaranteed right to trial. Said conduct also had the effect of violating Harold Wright's First Amendment Right To Assemble as it had the effect of labeling him a rapist which precluded his ability to assemble with others, including but not limited to employers, owing to that false statement.

*Id.* Wright has failed to provide, and the Court is unaware of, any authority for the proposition that a claim for common law defamation rises to the level of a constitutional violation.  Therefore, the Court grants Defendants' motion on Wright's claim for extra-judicial statements because Wright has failed to show a constitutional violation.

### 5.    Municipal Liability

There is no municipal liability without an underlying constitutional violation.  *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385–386 (1989).

In this case, the Court has found that Wright has failed to show an underlying constitutional violation.  Therefore, the Court grants Defendants' motion on Wright's municipal liability claims.[1]

---

[1] Wright asserts that the "lack of a policy" to maintain the 911 tape is the "cause in fact of the tape's destruction and a driving force behind the wrong conviction of Harold Wright."  Dkt. 65-1 at 19.  Wright, however, has failed to show that he has a constitutional right to any specific policy that would allegedly prevent wrongful convictions.

1  **C.      Rule 56(d)**

2          If a nonmovant shows by affidavit or declaration that, for specified reasons, it

3  cannot present facts essential to justify its opposition, the court may defer considering the

4  motion or deny it.  Fed. R. Civ. P. 56(d).

5          In this case, Wright requests that the Court either defer consideration of the motion

6  or deny the motion as premature.  Dkt. 66.  While additional discovery may support a

7  violation of state law, Wright has failed to show how additional discovery will support

8  any of his claims for constitutional violations.  Therefore, the Court declines to defer or

9  deny Defendants' motion on this basis.

10 **D.      State Law Claims**

11         After a case is removed, "if at any time before final judgment it appears that the

12 district court lacks subject matter jurisdiction, the case shall be remanded."  28 U.S.C. §

13 1447(c).

14         In this case, the Court has granted judgment for Defendants on all the claims over

15 which it has original jurisdiction and the remaining parties are not diverse.  Therefore, the

16 Court remands the remaining claims to state court because it lacks subject matter

17 jurisdiction.

18 **E.      Sanctions**

19         Defendants request that the Court impose sanctions for the Wrights' baseless and

20 frivolous lawsuit and subsequent proceedings.   Dkt. 35 at 40–42.  The Court finds that

21 sanctions are not appropriate under 28 U.S.C. § 1927 or 42 U.S.C. § 1988 and leaves the

22

1  mandatory state law sanctions for the state court to determine.  Therefore, the Court

2  denies Defendants' motion on the issue of sanctions.

3  ### IV. ORDER

4   Therefore, it is hereby **ORDERED** that Defendants' motion for summary

5  judgment (Dkt. 35) is **GRANTED in part** and **DENIED in part**, the Clerk shall enter

6  **JUDGMENT** for Defendants against Plaintiffs on Plaintiffs' federal claims, and the

7  Clerk shall remand this matter to King County Superior Court for the State of

8  Washington.

9   Dated this 27th day of August, 2013.

10

11

12  BENJAMIN H. SETTLE
  United States District Judge

13

14

15

16

17

18

19

20

21

22

ORDER - 15